# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**GIOVANNI KALI VEGA,**
**# X12648,**

    **Plaintiff,**

**vs.**                                                 **Case No.  4:23cv186-MW-MAF**

**J. RUNYON,**

    **Defendant.**
**_____/**

## SECOND REPORT AND RECOMMENDATION[1]

Plaintiff, proceeding pro se, filed a complaint on May 9, 2023. ECF No. 1. Plaintiff subsequently paid the filing fee, ECF No. 5, and his complaint was reviewed, *see* ECF No. 9, and then served on Defendant Runyon on August 15, 2023. On October 16, 2023, Defendant filed a motion to dismiss the complaint. ECF No. 23. Plaintiff was advised of his obligation to respond to the motion, ECF No. 24, and his opposition was timely filed. ECF No. 30. The motion is ready for adjudication.

---

[1] The first Report and Recommendation, ECF No. 21, concerned Plaintiff's motion for a preliminary injunction, ECF No. 19. The Report and Recommendation was adopted, and the motion denied over Plaintiff's objection. ECF No. 27.

**Allegations of the Complaint**

At the time of case initiation, Plaintiff was incarcerated at the Franklin Correctional Institution. ECF No. 1 at 2. Defendant J. Runyon is the Region One Gang Intelligence Supervisor for the Florida Department of Corrections. *Id.* He is sued in his official capacity only. *Id.*

In early January 2023, a prison official at Apalachee Correctional Institution - Captain Brown - contacted the Defendant and requested that he "label" Plaintiff as a "gang member." ECF No. 1 at 5. Plaintiff contends this was a false assertion, done for retaliatory reasons because the Assistant Warden had "verbally disciplined" Captain Brown about canteen operations while Plaintiff was the canteen operator. *Id.*

On January 16, 2023, Plaintiff was removed from his canteen operator job after Defendant Runyon issued the requested notice and Plaintiff now "has a gang affiliation file." *Id.* Plaintiff was transferred to a different "gang infected facility." *Id.* He complains that he should have been transferred to Zephyrhills Correctional Institution. *Id.*

In March, Plaintiff filed an informal grievance, stating that the photograph relied upon by Defendant Runyon as evidence was a "simple photo" of Plaintiff at age 15. *Id.* at 6. Plaintiff denied gang affiliation. *Id.*

Page 3 of 20

Plaintiff's formal grievance also said the photograph was "false evidence" and the "security threat group label should be withdrawn from" his record. *Id.* Plaintiff submitted a similar grievance to the Secretary's Office. *Id.* Although Plaintiff did not provide the results of his grievances, it may be assumed that his grievances were denied.

Plaintiff contends that Defendant Runyon provided three reasons to support labeling Plaintiff as a gang member: (1) he adopts the style or dress of a criminal gang; (2) he associates with one or more known gang members; and (3) he is "identified as a criminal gang by physical evidence." ECF No. 1 at 6. Plaintiff disputes those assertions. *Id.* at 7.

He contends that because of the Defendant's "false labeling" of him as a gang member, he is "being watched" and is afraid that he could be "attacked at any moment if the gangs fight one another." *Id.* He states that he wants to clear his name and record so that he will not be "unjustly judged by all." He further states that he had been given good jobs by prison administrators previously, but now "is not authorized to be employed" in those positions. *Id.*

Plaintiff asserts an Eighth Amendment claim against the Defendant, contending that the false label has placed his life "in jeopardy from other

known gang members." *Id.* at 8.  He has suffered the loss of a paying job, a transfer farther away from his home, his custody level was raised, and he is "housed with problem inmates." *Id.*  Plaintiff also asserts a state law claim against the Defendant as well. *Id.*  As relief, Plaintiff seeks injunctive relief (removing the "security threat group file" from his record), and monetary damages. *Id.*

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[2]  "A claim has facial plausibility when the

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in <u>Twombly</u>, 550 U.S. at 558).

**Analysis**

Defendant's motion to dismiss first argues that Plaintiff's complaint should be dismissed because Plaintiff has failed to state an Eighth Amendment claim for the violation of his Eighth Amendment rights based on the conditions of his confinement. ECF No. 23 at 6. Defendant contends Plaintiff has not alleged a "sufficiently serious" deprivation or injury to sustain his claim. *Id.* at 6-7. Additionally, Defendant states that Plaintiff has not sufficiently alleged facts to support this claim because Plaintiff has not shown that Defendant acted with a culpable state of mind. *Id.* at 7.

The Eighth Amendment[3] governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Although the Amendment does not require comfortable prisons, it prohibits inhumane ones.  *Id.*  The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr.l Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)).

---

[3] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation." Thomas v. Bryant, 614 F.3d 1288, 1303-04 (11th Cir. 2010).  The first type of claim challenges the conditions of confinement, the second type challenges a prison official's use of excessive and unnecessary force, and the third type of an Eighth Amendment claim is for the deliberate indifference to an inmate's serious medical needs.  Each claim is distinct and requires different proof.  DeJesus v. Lewis, 14 F.4th 1182, 1195 (11th Cir. 2021) (citing Thomas, 614 F.3d at 1303-04; Sconiers v. Lockhart, 946 F.3d 1256, 1265 (11th Cir. 2020) (stating that proof of an Eighth Amendment violation differs based on the type of violation alleged)).

The United States Supreme Court has held that "harsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley, 475 U.S. at 319, 106 S. Ct. at 1084.

A federal Eighth Amendment claim "requires a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (internal citations and quotations omitted) (quoted in Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010)). Furthermore, the objective and subjective "inquiries are contextual."[4] Thomas, 614 F.3d at 1304. "[T]o make out a claim for an

---

[4] "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."

unconstitutional condition of confinement, 'extreme deprivations' are required . . . ." 614 F.3d at 1304; *see also* Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (a condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health" or safety) (quotation omitted)).  Put another way, the risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Chandler, 379 F.3d at 1290 (quotation omitted) (quoted in Carter v. DeKalb Cnty., 521 F. App'x 725, 729 (11th Cir. 2013)).

In addition, a plaintiff must show the Defendant's "relevant state of mind" was one of "deliberate indifference."  *Id.* (citing Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991)). "Negligence does not suffice to satisfy this standard, . . . but a prisoner need not show that the prison official acted with 'the very purpose of causing harm or with knowledge that harm [would] result.'"  Chandler, 379 F.3d at 1289 (citing to Wilson v. Seiter, 501 U.S. 294, 305, 111 S. Ct. 2321,

---

Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)).

2328, 115 L. Ed. 2d 271 (1991), and Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994)).

Here, Plaintiff has alleged that he was falsely labeled as a member of a gang, and that the label carried negative consequences such as losing a paying job and being transferred away from his family. In response to the motion to dismiss, he also states that he was threatened by correctional officers "due to [his] false gang status." ECF No. 30 at 5. He says he has been assaulted by inmates seeking "to find out" if he is "hiding from any gang association." Id. He contends that the gang label has placed "his well being and life in jeopardy." Id.

The problem is that none of those consequences are "'sufficiently serious" to support his claim. Having lost a prison job does not constitute "a denial of the 'minimal civilized measure of life's necessities." There is no constitutional right for an inmate to have a paying job while incarcerated. Searcy v. Prison Rehab Indus. & Ent, Inc., 746 F. App'x 790, 795 (11th Cir. 2018) ("A prison inmate, however, does not have a constitutionally protected property interest in a particular prison job assignment and does not have an expectation of keeping a certain job"); Adams v. James, 784 F.2d 1077, 1079, 1082 (11th Cir. 1986) (recognizing "the principle that

prison officials control prison job assignments, cell assignments, and the like" and "job assignment and reassignment remain the prerogative of the prison administrators"). Because prison officials have the prerogative to assign, remove, and change prisoner job assignments and work duties, this consequence is insufficient to support Plaintiff's Eighth Amendment claim.[5]

Plaintiff also does not have a right to be transferred to a specific prison, or remain in a particular place. Meachum v. Fano, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); Montayne v. Haymes, 427 U.S. 236, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976). Moreover, his transfer to another prison facility is not a sufficiently serious consequence. It happens routinely for all prisoners.

Plaintiff alleged that he was transferred from Apalachee Correctional Institution, East Unit to the West Unit. ECF No. 1 at 5. That transfer was minimal as both prison facilities are in Sneads, Florida. Plaintiff then said he was transferred to a "gang infected facility," but he did not identify the

---

[5] Notably, when reviewing a "conditions of confinement" case, this Court must be guided by the consideration that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." 475 U.S. at 321–22, 106 S. Ct. at 1085. Obviously, identifying inmates with gang affiliations is relevant to maintaining prison security.

Case No. 4:23cv186-MW-MAF

institution. *Id.* His response to the motion to dismiss clarifies that he was sent to Franklin Correctional Institution, ECF No. 30 at 4, which is where Plaintiff was housed when he filed the complaint in May 2023. *See* ECF No. 1 at 2. That is less than 100 miles from Sneads.

At some later point, Plaintiff was transferred to Santa Rosa Correctional Institution Annex. ECF No. 30 at 5. However, at the time he filed his response in December 2023 he had been transferred to Liberty Correctional Institution. *Id.* at 20. Liberty Correctional Institution is in Bristol, Florida, and is approximately 30 miles from Sneads, Florida.

Notably, Plaintiff alleged that he should have been transferred to Zephyrhills Correctional Institution.[6] ECF No. 1 at 5. That is some 300 miles to the south. Being moved from Sneads to Bristol in the course of a year was a minimal distance and does not support Plaintiff's contention that he was "transferred further away from home." *Id.* at 8. The transfer was not a sufficiently serious consequence and would have a minimal impact on the ability of Plaintiff's family and friends to visit him.

---

[6] Plaintiff does not identify his home, but the Department of Corrections website reveals Plaintiff had a conviction in Orange County, Florida, and the sentence for which he is currently incarcerated is for a crime in Osceola County, Florida. Those are adjoining counties in central Florida.

What remains is Plaintiff's contention that the gang label has created a threat to his safety. The reality is that creating a label to identify inmates as having gang affiliations is not a public announcement of the inmate's status. It is an internal record-keeping device for prison officials. Any threat to Plaintiff from inmates suspecting he has a gang status lacks a causal connection to the Defendant's action.

The Court does not minimize the potential danger to an inmate should he be suspected of belonging to a gang, having left a gang, or otherwise at odds with a gang. Gang violence is a reality of prison life. However, that danger exists for every inmate, at virtually every institution. To say that the danger is due to the actions of Defendant Runyon goes too far. Any potential harm to Plaintiff is speculative. Moreover, prison officials have a duty to protect the safety of their inmates. If Plaintiff has good reason to believe he is in danger from a particular person or gang, Plaintiff may request protection. The Department provides a process for taking steps to avoid a problem before it occurs.

Additionally, Plaintiff's claim is insufficient because there are no factual allegations which show that the Defendant had a "state of mind" that was deliberately indifferent to his safety. Plaintiff's complaint

Case No. 4:23cv186-MW-MAF

acknowledged that Defendant provided three reasons to support the action taken.  That Plaintiff disagrees with Defendant's reasons and contends that the Defendant got it wrong does not show that the Defendant had a culpable state of mind.

In response to the motion to dismiss, Plaintiff also argued that his due process rights were violated.  ECF No. 30 at 8-10.  That claim was not presented in the complaint.  It is not appropriate to attempt to amend a complaint by raising new claims in response to a motion to dismiss.  "[A] plaintiff must follow the procedures set forth in Rule 15 in order to properly raise a new claim."  Griggs v. USAA Cas. Ins. Co., 263 F. Supp. 3d 1375, 1381 (N.D. Ga. 2017) (citing Huls v. Llabona, 437 F. App'x 830, 832 n.5 (11th Cir. 2011)).

Nevertheless, even if Plaintiff has properly presented a due process claim in the complaint, it would not survive.  The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  While prisoners may "claim the protections of the Due Process Clause," Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963,

Page 15 of 20

2974, 41 L.Ed.2d 935 (1974),[7] due process does not exist in a vacuum. Due process exists to protect a liberty interest. As noted above, Plaintiff does not have a protected liberty interest in a particular prison job, being housed in a particular prison facility, or not being labeled as having a gang affiliation. Because Plaintiff was not deprived of a protected liberty interest, the changes he experienced were not entitled to due process protections. Any due process claim raised based on the facts alleged in Plaintiff's complaint would be insufficient.

Defendant also raises Eleventh Amendment immunity from damages as a basis to dismiss this case because Plaintiff sues him in his official capacity only. ECF No. 23. Although the motion to dismiss should be granted on the merits of Plaintiff's Eighth Amendment claim, the Court has considered Defendant's entitlement to Eleventh Amendment immunity.

Defendant was sued in his official capacity only, and an official capacity claim is just "another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66,

---

[7] Wolff v. McDonnell held that before an inmate could lose good-time credits, the Due Process Clause requires prisoners be given advance written notice of a charged disciplinary violation, a written statement of factual findings, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.

Case No. 4:23cv186-MW-MAF

105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).  Defendant is an agent (employee) of the Florida Department of Corrections.  Absent limited exceptions, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment.  Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also* Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (reiterating that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court").  That "bar remains in effect when State officials are sued for damages in their official capacity." Kentucky, 473 U.S. at 169, 105 S.Ct. at 3107; *see also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (same).

There are three recognized exceptions to the Eleventh Amendment bar.  Plaintiff's claim does not meet any of the three exceptions.  First, there has been no waiver of sovereign immunity because Congress did not abrogate the State's immunity in enacting § 1983, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974).  Second, the State of Florida has not waived its Eleventh Amendment immunity or consented to

Page 17 of 20

be sued in federal court under § 1983. Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986).

The third exception is through Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), but is not applicable either. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (cited in Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002)). Here, Plaintiff is seeking monetary damages for relief for past constitutional violations and does not seek prospective injunctive relief. His request for injunctive relief is to remove a gang affiliation label issued in the past. There are no allegations of ongoing violations and, moreover, the Court finds that placing a gang label in the Department's records was not a violation of federal law. The Eleventh Amendment also bars Plaintiff's federal claims.

Finally, Plaintiff's complaint also asserted a claim that Defendant's actions violated the Florida Declaration of Rights as stated within Article I, Section 17 of the Florida Constitution. ECF No. 1 at 8. That provision states in relevant part: "Excessive fines, cruel and unusual punishment, attainder, forfeiture of estate, indefinite imprisonment, and unreasonable detention of witnesses are forbidden. . . . The prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." FLA. CONST. ART. I, § 17. Because Plaintiff's federal Eighth Amendment claim is insufficient, the state constitutional claim for cruel and unusual punishment is also insufficient because it must be considered in conformity with federal law. *See* Paz v. Coonrod, No. 5:21-CV-242-TKW/MJF, 2022 WL 2441866, at *3 (N.D. Fla. June 7, 2022), report and recommendation adopted, No. 5:21-CV-242-TKW/MJF, 2022 WL 2439468 (N.D. Fla. July 5, 2022), reconsideration denied, No. 5:21-CV-242-TKW/MJF, 2022 WL 3641011 (N.D. Fla. July 27, 2022), appeal dismissed, No. 22-12738-A, 2023 WL 5281529 (11th Cir. Apr. 4,

2023) ("Because Paz has failed to allege a plausible claim under the Eighth Amendment, he necessarily has failed to allege a plausible claim under article I, section 17").

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, ECF No. 23, be **GRANTED** and Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted, and that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this case was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on March 7, 2024.

   S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R.**

Case No. 4:23cv186-MW-MAF

**Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**